Good morning, everyone. Welcome. Our first case for argument this morning is N.J. v. David Sonnabend v. Beth Kaminsky. Mr. Monroe. Thank you, Chief Judge Sykes. May it please the Court, John Monroe, for the appellants. This is a public school free speech case, so there's a threshold question of what test applies in determining whether there is a violation or not. We assert that the landmark case of Tinker is the one that applies the substantial disruption test that the Court promulgated there. And this circuit has determined that a substantial disruption means falling test scores, an uptick in truancy, or other indications of a sick school, none of which were present in this case. Mr. Monroe, if we agree and think that the substantial disruption test from Tinker applies to your case, do we have to overrule Mueller, or is Mueller consistent in any way with that? I think Mueller is consistent because, actually, the Morse case helps us out there. That was a Supreme Court case. That was the Bong Hits for Jesus case, I believe. And it says in there, Kohlmeier does not control this case because no one would reasonably believe a banner promoting drug use were the school's imprimatur. And Mueller's the same way. Mueller was a school imprimatur case because the concept was if the students are going to pass out leaflets or invitations or anything like that, with the school's permission, that they would be bearing the imprimatur of the school. But we don't have that here. We're talking about students' own clothing. Was it an imprimatur case? Is that how you're construing it? I am, yes. I don't think they used that language, but Mueller was following Kohlmeier, and Kohlmeier was a school imprimatur case. And Mueller didn't have the benefit of Morse. I understand that, but it was the student handing it out as opposed to something being done with the school's imprimatur on it, such as the newspaper. I agree the facts are different, but the concept there is the student was seeking the school's permission to stand in the hallways of the school and pass out leaflets. And the idea is that the school's allowing him to do that, that some people might reasonably believe that the school's imprimatur is attached to that, as opposed to what students choose to wear on their own clothing. No one would believe that that has the imprimatur of the school. Mr. Monroe, isn't the appropriate doctrinal category into which Mueller and Kohlmeier both fall is speech form doctrine? And this is not a speech form case, and that's why this case is different and falls within the Tinker line of cases instead. Speech form doctrine is different from the school speech Tinker doctrine, and those are two separate doctrinal categories. We haven't always been clear about that. The Supreme Court hasn't always been clear about that in the context of student speech, but they are two different doctrinal baskets. I think that's true. Here we're talking about whether the school has to tolerate student speech as opposed to whether the school has to sponsor the student speech. It's not just a question of sponsorship. It's a question about whether the school has opened a speech form when we're analyzing a case that falls within that doctrinal category. The first question is what kind of a forum the government has opened here at school. This just isn't a speech form case. This is a pure student speech case. Form doctrine has nothing to do with it. I think that's true, Chief Judge. And so it doesn't really turn on the question about whether the speech in question reasonably bears the imprimatur of the school. It's just a question of which doctrinal basket the case falls in, and this isn't a speech form doctrine case. I do think that's a fair way of looking at it, and I think the Supreme Court cases, including Morris, help point that out. And that was the fundamental error of the district court in this case. The district court's error in this case was treating it as a speech form case. I think that's correct. Assuming that Tinker applies and that we're looking at substantial disruption as the hallmark of the case, does the school board, does the school authorities have to wait until there is a substantial disruption, or can they reasonably anticipate a substantial disruption and make their case on that basis? No, Judge Ripple, I think the case law is clear that the school does not have to wait until there's actually a substantial disruption. They just have to reasonably forecast it. In this case, however, there was no forecast. The appellees have just asserted that they could have made a forecast, and we've discussed in our briefs why they really couldn't have based on the facts that they had and the research that they had done. What kind of a showing do you think they need to make in order to meet the test? I think their showing could come in multiple forms. They at least have to show how the speech in the case could result in falling test scores, the uptick in truancy, or other symptoms of a sick school. In this case, both of the principals involved deposed that they didn't have that information and they didn't think anything like that was happening here. So I think they've established their own facts that would refute any kind of reasonable forecast of disruption in school, of substantial disruption. If the substantial disruption test applies, is it relevant that Plaintiff NJ attends an at-risk school? No, I don't believe it. He's attending the public school. He's just attending a certain classes that the school has assigned to him. The fact that he's in an at-risk academy is just what the school calls the set of classes that he's attending, but I don't think there's any significance to that. For the objective analysis, would that be a factor the court should consider at all? I'm sorry, I don't understand the question. For the objective substantial disruption analysis, would the fact that he's in at-risk classes or categorized at-risk, is that relevant at all? I don't see how it is. I mean, maybe somehow that could play into whether they reasonably forecast a substantial disruption. I'm not sure offhand how that would be the case, but I guess they could at least make that argument, but they haven't. What about the reality that we live in now in the school shooting context, that they happen, unfortunately? Is that something that would impact the court's analysis? Well, there would have to be some kind of correlation demonstrated between wearing a T-shirt that depicted a gun and a school shooting, and I'm not aware of any such correlation. The appellees haven't asserted that there is one or even tried to demonstrate that, I don't believe. Given the fact that this test is a neutral test applied to both pro and anti-gun depictions, how much of a showing does the school board have to make, given the fact that we do need to show some deference to the judgments of these educators? Well, it's hard to say in the abstract because they haven't made any showing. I mean, they didn't attempt to show that they had made any kind of forecast. So what would be sufficient is hard to say in a vacuum without them having done something that could be analyzed. But like I said, in the present case, they've actually established the facts that would negate any kind of reasonable forecast they could make because they've demonstrated that they don't have any information about uptick in truancy or falling test scores or other indications of a sick school. I have a couple questions, Mr. Monroe, about the standing of one of your clients to proceed with this claim and then also the form of the claim. So some predicate questions. It's my understanding that N.J., the student in the Nina School District at the middle school, has already graduated middle school. Is that right? No, he's still in middle school this year. He is, at least the last I heard, I didn't check before I came to court this week, but the last I heard he was doing distance learning. But he's still in the school. And N.J. is the Shattuck Middle School student? Yes. He was in eighth grade last year, as I understand the record. My recollection, he was in seventh grade and is still in the middle school this year. Do we know that for certain? Well, I did. According to the record, he was in eighth grade last year, so far as I could tell. I did. I mean, I was concerned about that. So I did check with his parents. I said, he is still enrolled in the middle school, right? And they said yes. So I didn't ask about what grade he was in, but since they said he's still in the middle school, I assume that meant he was seventh last year and eighth this year. Is it a middle school that's seventh through ninth grade? It could be. I don't know that. Okay. We might need to pin that down more specifically. No one has raised the standing issue, but clearly if he's not at this school any longer, there's nothing an injunction can do for him. I understand. He's moved on to the high school, so I think we need some information about that. And then the other student, A.L., who's at Kettle Moraine High School, what grade is he in this year? I don't recall what grade he's in, but I do know that he's still in the high school. This school year, he's still in the high school. But he's doing distance learning? Actually, you're right. I did have that backwards. He's the one doing the distance learning. So N.J., the Nina student, is not doing distance learning. He's not doing distance learning. He is enrolled in actual school. A.L., the Kettle Moraine student, is doing distance learning? Yes. For what duration? Do we know? It's indeterminate at this point. He was doing distance learning because there was a mask requirement and he didn't want to wear a mask, so that's why he was doing distance learning. I don't know if they even still have a mask requirement. So when that relaxes, his intention is to go back to school. I take it while he's doing distance learning, he's not subject to the dress code? I don't know if that's true or not because if you're doing distance learning and you're on video, then you can be seen. So I would assume that the school would still apply its dress code to students that they can't just show up in their pajamas or something like that. You don't know the answer to that question, right? No, I guess I don't. It's possible that they don't apply the dress code to distance learning, and so an injunction wouldn't do him any good either, depending on the duration of his remote learning status. But I suppose there's no specific answer to that because we don't know what the status of the school's mask mandate is at this point in time. That's correct. I think we may need some more information about that, too, in order to determine that both of your clients have standing. I'd be happy to check on that and file something to supplement the record with that. And then as to the form of the claim, part of it relates to what actually the policy is in each of these schools that you're objecting to and whether this is a facial or an as-applied challenge to that policy because some of the questions that my colleagues have been asking about the scope of the evidence and whether we take into account individual characteristics involving your clients' disciplinary records, etc., that would be important for an as-applied challenge. It would not be important for a facial challenge, and so I need clarification on that. Well, neither of the policies, at least the last versions I've seen, actually prohibited wearing shirts that depicted guns. They weren't that explicit. They say things on the order of that clothing has to be appropriate. But in both cases, the administrators have interpreted that to mean that they can't wear clothing that depicts guns. So even though that's not exactly what the policy says, that's how the policy is being interpreted, so this would be a facial challenge to those policies with that interpretation. And we have something official in the record from the policymakers, the two principals here, that they apply this more general policy, no inappropriate clothing, as prohibiting any clothing that depicts a firearm. Yes, I believe that is on the record. So they've testified to that, that that is, in fact, their policy. Yes. All right, and are you making a facial challenge to that, or is this an as-applied challenge with respect to the specific T-shirts in this case and the specific disciplinary backgrounds and history of your clients? There certainly is an as-applied challenge to the specific shirts at issue in the case, and we've raised that. The shirts are in the record. I think there are images of the shirts in the district court opinion, and there are textual descriptions of the shirts. So there certainly is an as-applied challenge for those shirts, yes. So you're challenging this policy of no clothing that depicts firearms as applied to your clients and these specific shirts only. Yes, and then there's the facial challenge to the interpretation of the policy that just doesn't allow depiction of guns at all. So there is a facial challenge. Yes. I mean, if the facial challenge succeeds, the as-applied challenge just falls away, right? So we start with the facial challenge and then fall back on an as-applied challenge as needed. Okay. So make your facial case. So the facial case is, and by the way, our position is for depictions of firearms in a nonviolent, nonthreatening manner because we're not addressing actual threats. So the facial case is, if there's a depiction of firearms in a nonviolent, nonthreatening manner, it's just pure speech. There's no substantial disruption. The school hasn't reasonably forecast one. And there's really no correlation that you could make between an image of a firearm and any kind of disruption in the school because it's just an image of a firearm, just like it could be an image of a sports player or a car or something like that. There might be people who react one way or another about it. But if people don't like it, that's not enough to overcome a First Amendment challenge because, as the Supreme Court said time and again, general discomfort associated with something that might be controversial or unpleasant doesn't take it outside the realm of the First Amendment. Have they said that in the school ambience? Yes, I believe Hinker says that, Judge Ripple. Is this a political speech case? I guess it depends on whether you really think that advocating possession of firearms is a political issue. I guess nowadays maybe it is. I don't think they viewed it necessarily as political when they wore their shirts. They like firearms and they like to express their like of them and their belief that people ought to be able to keep and bear them. I suppose that's borderline political. Didn't he testify that he was wearing this in support of Second Amendment and the right to bear arms? I don't recall there was testimony about that. One of the shirts actually has the text of the Wisconsin constitutional right to keep and bear arms on the back of it, but the principal said she never saw that. So the shirt actually has constitutional text on it, but the principal didn't take that into consideration. And Second Amendment symbolism. I'm sorry? Second Amendment symbols are on at least one of the t-shirts, right? That's certainly true. One of the shirts says 2A in 1776. I don't know if that's political or not. Got the year wrong, but that's okay. I don't know if that's political or not. We get the gist. And maybe they weren't trying to correlate the 2A and the 76. Wisconsin's is much more recent. But they're both printed on there. I think I'm way into my rebuttal, so I'd like to reserve my time. Thank you. Thank you. Mr. Statler. Good morning, Your Honors. My name is Ron Statler, and I'm here on behalf of the two school districts involved in this case. There are really two things that I know for certain. One is that constitutional law can be difficult to apply because our constitutional rights are dynamic, and they have to adapt as our society changes. And then the other thing that I know is our public schools have changed dramatically from the time that Mr. Monroe, myself, or any of you were in school. Our schools have changed since Tinker in 69. They've changed since Fraser in 86, Hazelwood in 88, or Muller in 1996. Since then, our schools have been shaped, and some might say disfigured, by Columbine in 99, Sandy Hook in 2012, Marjory Stoneman Douglas in 2018, and the hundreds of school shootings that have occurred around the nation since then and the ones that have occurred near these two school districts in Wisconsin during the time that these issues were going on. Mr. Statler, do you know the answers to the standing questions that I raised? Are these two students still in your schools? My understanding is that – I always get them confused. The Nina student. Nina, easier for me, I believe is NL, is attending school. He would be in ninth grade this year. And is it a seven through nine middle school? It is not, but I will tell you the policy isn't different between middle school and high school. The district as a whole – He's in the high school now. Correct. He's not in the middle school. Let me say this. I assume he matriculated from middle school to high school. Chronicity-wise, he would have been in eighth grade last year and should be in ninth grade this year, which would be the high school. But you don't know if he is. I can't sit here and tell the court for certain that he is. And we don't know what the high school's policy is as far as the record is concerned. As far as the record is concerned, probably not. But district-wide, that policy is the same. And your client is the middle school principal, right? The defendant here is the – The defendant here is the middle school principal. It is the district's policy. But an injunction against the middle school principal isn't going to do him any good if he's in the high school. So there's a standing problem. I hate to argue against myself, but I would look to NUXL. Where, in that case, Judge Posner, if I remember correctly, the second time it came up under Indian Creek, they raised this mootness issue about it. And what he said is, remember, when we apply these constitutional principles in our schools, we're not going to apply them just to this plaintiff. We're going to apply them to everybody. It's a facial challenge. We've clarified that. But we don't know what the high school's policy is, and we don't have the right defendant. So set aside whatever was said in that case. We need to pin down what the actual facts of this case are. Correct. In order to assess whether at least one of the two plaintiffs here has standing to bring this claim. Correct. And then in regard to Kettle Moraine, it is my understanding that he's attending remotely. And to answer Your Honor's question, the policy would be applied if you were on camera and your shirt was that image of the gun was showing on camera to everybody else. And we know that as a matter of what the record tells us. We don't know that as a matter of what the record tells us because as this came up, we weren't there. I'm not sure I understand that. It was at the very end of the case when he went to school remotely after we had briefed the summary judgment motions. I see. You know, these cases take a while to work their way through. So COVID came in the middle. We're going to need clarifying statements from both sides on these standing questions. Where these students are in school and with respect to the Kettle Moraine student A.L. who is on remote learning, what his status is, what the school's policy is with respect to the dress code and remote learning. And how long the mask mandate will be in place, which I understand is the reason why he won't come to school. Correct. And we'll be happy to supply that to the court. Okay. Thank you. These cases are always difficult because they all turn on their own facts. I think Chief Justice Berger said it famously in Frazier that we find ourselves somewhere between Tinker's armband and Cohen's jacket. And these students weren't wearing armbands. They were wearing T-shirts. And they were wearing T-shirts that depicted images of guns. And I don't believe that that is something that our schools are required to tolerate. Going back to some of the questions that the judges asked Mr. Monroe, Mueller controls here. Mueller was a speech forum case. This is not a speech forum case. I don't understand Mueller to be a speech forum case. Mueller started with, here's what we have to look at. Are we in a public forum or are we in a non-public forum? That's a speech forum case. This is not a speech forum case. This is a straight-up student speech case. And the forum doctrine doesn't apply. Leafleting and that sort of activity implicates forum doctrine. In that case, the plaintiff was ejected from a forum that he or she, I think it was a she, said she had a right to enter under the First Amendment. This is not about that. This is just a straight-up tinker student speech case. I don't see it as a tinker case, though, because there's a number of distinctions between this case and tinker and tinker and Mueller. When we dealt with the issue in tinker, it was not viewpoint neutral. Those questions of content-based restrictions and viewpoint neutrality apply in forum doctrine cases. Because when the government opens a forum, either a traditional public forum or a limited public forum or a non-public forum, with respect to the latter two forum categories, the government is entitled to set the rules for those fora. And that implicates questions of viewpoint discrimination. The straight-up student speech cases, of which tinker was the first, implicate just the question of student speech rights, First Amendment rights in school. And this is a tinker case. This is not a Kuhlmeier case or a Mueller case, because those are forum doctrine cases. So the question of viewpoint neutrality is just not at issue here. But when we talk about school cases, we're always in the same forum. We're in a non-public forum. It's not a forum doctrine case. Right. That's a separate doctrinal category. Mueller, and I think the district court here, Judge Griesbach, gave a very good analysis of Mueller and why it applies in this case, and why tinker and the substantial relationship test. Judge Griesbach just assumed that this was a forum doctrine case. It's really not. So accept my premise and argue it on tinker grounds. I will accept your premise. Even if we go to tinker, we have substantial disruption in this case. And there's a part of tinker that I think often gets lost when we talk about substantial disruption. Tinker didn't talk just about substantial disruption. It talked about substantial disruption or interfering with the rights of others. And I think both of those things come to play in this case. When these students come to school wearing a shirt with the image of a gun on it, it creates fear and it creates anxiety amongst their classmates. Now, I will tell you, 30 years ago, 40 years ago, you probably would have laughed at me if I would have said that students are affected simply by the image of a gun on a shirt. But we don't find ourselves 30, 40, 50 years ago anymore.  Mr. Stadler, your opponent, Mr. Monroe, drove home the point that you are saying this, but you're saying it without a record and that you need a record. What is your response to him? We have a record, Judge Ripple. Tell me about it. So, we had testimony from both of the principals about the fact that students came to them and complained about these students wearing these shirts because the images of the guns caused them to be fearful of these students. You know, it's context. So, take NJ. He comes to school wearing the image of a gun on his shirt, a necklace with shell casings, a belt with shell casings. He takes drumsticks and whittles them into what he calls shanks and whips them around at his classmates. His classmates had ample reason to be concerned about him and to be fearful when he comes wearing a shirt with a gun on it. That behavior is certainly punishable without contradicting the First Amendment. What we're talking about is the t-shirt policy here. And his behavior problems are a separate issue if this is a facial challenge, as we've clarified it is. At least in the first tier of analysis. They are a separate issue, but I don't believe you can take those away from the gun image either because it gives context. Students are fearful of that. And it's the overwhelming remembrance when they see that gun that at any given day there could be a school shooting in their school. For Nina... Away from school, it's probably more a matter of choice. They're not a captive audience. I mean, we require them to go to school. They have to go to school. And if they're fearful while they're at school because there's an image there that causes them fear and anxiety, then we're requiring them to be exposed to that. At home, they can turn off the TV, turn off the Xbox, don't watch the news. They have those abilities and those choices to make. But at school, we make them come there. And if we make them come there and we make them afraid and make them anxious, that is going to be a problem. And images of guns are found nowhere else in the schools and nowhere else in the school curricula. So there's not one of those signs outside the building with an image of a gun with one of those red circles around it and a line through it. I don't believe there are any on the school. It's a felony. You can't come on. You can't get to the door. I'm asking about the sign, the image. The fight here is about images and what the images do in terms of disrupting the learning environment. And if those images of firearms appear in other forms in the school, it's hard to argue that seeing it on someone's T-shirt is going to substantially disrupt the learning environment. I can agree and disagree with that. Let me answer it straightforward firstly. There's nothing in the record to show that there are any such images at either of these schools. So you don't have a gun-free school zone sign outside your buildings? I don't know. But there's nothing in the record that would show that there is. Beyond that, I would say it's quite different for a student to walk one time a day into the building and see a sign versus sitting next to your classmate all day, seeing that image all day long as you're sitting there. And the Bill of Rights is not taught in either of these schools with the Second Amendment included? And there are no images ever in the history curriculum of founding era patriots with muskets? There is nothing in the record to suggest that there are any gun images in the curriculum posted on walls or anywhere in either of these schools in this case. Nothing. Would a student wear a T-shirt that had the text of the Second Amendment on it? Different issue. And let me be clear on that. Judge Rovner has written dissents in almost every one of the circuit's free speech cases, and she talks about we don't want to stop our kids from having the experience of being able to discuss these issues. That's what free speech is about. Nothing stops any of these children at NENA or at Kettle Moraine from having that open discourse at school. And as Judge Griesbach noted in his decision, they're free to write about it. If they have to write an essay in their English class, they can write about the fact that they support the Second Amendment, they love guns, they enjoy hunting. All that's being banned is the image of the gun, not the discussion of guns, not the discussion of the Second Amendment. So some speech can be suppressed when it implicates firearms, but not all speech implicating firearms. It is reasonable for the school to ban the image of a gun on a student's T-shirt because of the effects that it causes. But there is no other regulation that we have in either district that prohibits people from mentioning the term gun, from mentioning the Seventh Circuit. If you want to wear a shirt that supports the Seventh Circuit, you may. Second Amendment, I think you mean. Yes. Too many words. A.L. wore a shirt to school that was a parody of the periodic element table that spelled out AR-15. And AR-15 is known as an assault rifle. He wasn't made to take that off. He wasn't prohibited from wearing it. He got to express himself through that shirt. It's the image of the gun that is being controlled by the school district, and I believe it's appropriate. We have undisputed expert testimony from Dr. Bushman that images of guns affect students. It causes fear and it causes anxiety. What's the line between discomfort, discontent with images, and how they make you feel uncomfortable and substantial disruption to the school? Because that's really the test. I think what you have to look at is not just whether there is a random perception, but do we have something that can be, in effect, measured? So it's not that people dislike guns and complain they shouldn't be allowed to wear guns. I don't like guns. What was complained of and made clear to the administration is that the images of the gun had an actual effect. It wasn't a matter of opinion. On how many students? Many. How many? I can't tell you if it was 30 or 300. That's important. Is that in the record? The testimony is in the record, and Judge Griesbach, in fact, ruled on it because there was an evidentiary challenge to it. How many? I don't have a number for you, Judge. I didn't see it in Judge Griesbach's decision, the number of students that complained about this. You did or didn't? I did not. And I said, I don't have that number for you, not because I can't recall it. It was never developed as to the exact number. Okay, that's your burden, and you didn't carry it, apparently, by actually putting in evidence about how many students complained. So we don't know how many students complained. It gets to be a hard thing for a school district to be caught in litigation because we don't call students down to the office to get affidavits from them. I understand, but it's your burden to demonstrate that this policy is constitutional. And was it not developed, or you just don't know it? Because I thought you said a moment ago that during a discovery dispute, Judge Griesbach let this information into the record, and you just didn't know the numbers off the top of your head. He let in the testimony from the administrators that multiple students had complained to them that they were fearful and that they were anxious as a result of the gun images on the shirts. Did that testimony say how many other than multiple? It did not. As I said, it is not in the record as to whether it was 30 or 300. It's not there. So nobody asked that in deposition, apparently? I don't believe the number was asked in deposition. And you didn't ever ask your clients, apparently. This goes back to my comment about schools being in litigation. School administrators don't walk around with a notebook where they tally things. They know when the student body has spoken to them and conveyed issues to them. The student body is not monolithic. If there's a serious concern about a substantial disruption or meaningful material interference with the learning environment, you'd expect the administrators to document it. In NENA, they had to implement a rule that NJ couldn't be unsupervised in the class because the class as a whole was concerned about him. Right. That's because of his behaviors. That's a separate issue. I'm talking about the facial challenge here. It was because of all his behaviors. If this prohibition on images of guns is constitutional, then we would fall back on the as-applied challenge. I'm talking about the broader question here. We don't have a particular number for you, but it was substantial and it was cognizant. To go back to one of the questions you asked earlier, at the start of the school year, all of the teachers are given the dress code. They are told that guns are not permitted as part of the dress code because they're inappropriate. Students are given that in their homeroom when the school year starts as well. So the rule is out there. It's clear. And I think the facts of this case show both substantial disruption and the other part of Tinker, and that is those gun t-shirts interfere with the rights of other students to attend school free of fear, free of anxiety, and not having to look at an image every single day that tells them their school might be the next one that's shot up. Thank you. Thank you. Mr. Monroe, anything further? I just wanted to touch on a couple of things that the appellee said. One, I did ask in deposition of both of the principals how many students had complained and they weren't able to tell me. It was basically anecdotal. They said some students complained. They hadn't actually even spoken to the students. They heard it from teachers who heard it from students. So it was not something apparently that was really documented or that they had any kind of objective criteria on. I also wanted to address the NJ discipline things. We actually had the affidavit or the declaration of NJ in the record that he actually disputes that that incident occurred. But in any event, his principal said that that was handled as a disciplinary matter by the teacher in the classroom. It didn't actually even rise to the level of being referred to the principal for any discipline. So as you pointed out, Chief Judge Sykes, that was a disciplinary matter that's kind of separate from whether the Constitution was violated or not. And then the last thing I wanted to point out is we did say in the record that Kettle Moraine High School has a trap team. There are pictures of students holding real shotguns, not just images of drawings of guns on shirts that are part of the school environment. This is after school club? Yes. That's all I had. Unless you have any other questions, I'd ask you to reverse. Thank you. Thank you. The case is taken under advisement.